THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NICKY ROWLAND, Defendant-Appellant.

Second District   No. 77-436

Opinion filed June 30, 1978.

312

Mary Robinson and Allen L. Wiederer, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial defendant, Nicky Rowland, was found guilty of murder and was sentenced to 15 to 25 years imprisonment. The sole issue on appeal is whether the trial court erred in admitting two photographs of the decomposed body of the victim into evidence.

On December 31, 1975, Rockford police discovered the body of Guillermo Bana in a hallway of his home; the victim was naked except for a pair of shoes. The body was covered with blood; there was a large slash across the stomach area, another wound in the chest cavity, five or six wounds on the right side of the upper torso and the victim's legs and arms appeared to have been cut with some type of weapon. From the deterioration revealed on inspection of the surface of the body, it was estimated that the victim had been dead for a period of five to six days. The cause of death was the result of internal and external bleeding produced by the wounds to the victim's body.

Examination of the victim's residence revealed the largest concentration of blood in the hallway and in the bedroom, particularly on the windows, drapes and bedspread. A search for weapons in the victim's

residence revealed a machete type knife in the bedroom just inside the door on the heat register.

On January 1, 1976, Rockford detectives with an arrest warrant and complaint for defendant went to the Rock Island county jail where defendant was in custody. After being advised of his rights, defendant was taken to Rockford where he dictated and signed a typed confession, which was later introduced at trial. Briefly, the defendant's confession recited that being short of money, he had gone to the victim's home to engage in some sexual activity for which the victim would pay him. In his coat he carried a bayonet, which he had borrowed from a friend for protection. During the sexual act, the victim bit defendant's penis and defendant hit the victim on the head. The victim left the room for a moment during which time defendant got the bayonet from his coat; he also put his gloves on. The victim came into the living room, naked and holding a machete. The victim came at defendant; defendant pulled out the bayonet and a struggle ensued. At one point in the struggle defendant picked up the machete and struck the victim on the head. Defendant picked up the bayonet and left. He tried to return the bayonet to his friend but as the friend was not at home, defendant hid the bayonet under some rugs on an old couch in the back porch of the top floor apartment where the friend lived.

At trial, in addition to the testimony of the investigating officers and the medical testimony, the State, over defendant's objection, introduced two photographs of the victim's body, taken at the site of the offense. People's Exhibit 1 was a picture of the victim's body in the hallway in the position in which it was found. A second photograph, People's Exhibit 2 was taken after the body was turned to get a better look at it.

Defendant contends it was prejudicial error for the trial court to allow those photographs into evidence as they had little or no probative value to any of the issues presented to the jury for determination and could only serve to arouse prejudicial emotions on the part of the jury towards the defendant. While the State asserts that the use of the photographs was necessary to show the number and location of the wounds to the body as well as the position of the body at the time it was discovered, defendant argues that due to the amount of blood and decomposition of the body it was virtually impossible to discern any wounds, and, more importantly, the evidence was undisputed on those points.

The three cases relied on by defendant are distinguishable from the case at bar. In *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827, the body of the deceased bore little superficial evidence of injury and the gruesome nature of the pictures was caused almost entirely by the autopsy procedure. In both *People v. Jackson* (1956), 9 Ill. 2d 484, 138

N.E.2d 528, and *People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121, the court determined that the photographs of the victims had no probative value and could serve no purpose other than to inflame and prejudice the jury.

■■ In *People v. Jenko* (1951), 410 Ill. 478, 482, 102 N.E.2d 783, 785, our supreme court stated:

> "Evidence having a natural tendency to establish the facts in controversy should be admitted. A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury. Any testimony concerning the details of a murder or other violent crime may have such tendencies, but manifestly this could not suffice to render it incompetent. Of course, where spectacular exhibits having little probative value are offered for the principal purpose of arousing prejudicial emotions they should be promptly excluded. But questions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant."

■■ The rule as to admissibility of photographs of a deceased in a criminal case is well stated in *People v. Jackson* (1956), 9 Ill. 2d 484, 490, 138 N.E.2d 528, 531:

> "Whether the photograph of a deceased is properly admissible depends upon whether it has probative value, such as aiding a jury in the better understanding of medical testimony or aiding them in determining the manner in which the wound was inflicted [citations.] Mindful of the prejudicial emotion that might be aroused by the introduction of a victim's photograph, the courts have, on the whole, been strict in their requirement that a proper purpose be shown for the introduction of such an exhibit."

The fact and cause of death, the number and location of wounds, the manner in which they were inflicted and the willfulness of the act in question are all material to the offense charged. *People v. Jenko* (1951), 410 Ill. 478, 482, 102 N.E.2d 783, 785.

■■ We are of the opinion that the photographs of the victim's body were properly admitted into evidence: one corroborated the testimony as to the position of the victim's body at the scene; both served as an aid to the jury in understanding the medical testimony as to the cause of death, and by illustrating the number and location of the wounds on the body, the manner in which they were inflicted and the willfulness of the act here.

■■ Defendant submits that the evidence is undisputed as defendant admitted stabbing the victim and therefore there is no issue to which the

photographs would be of probative value. However, even where a defendant stipulates to the identity of the deceased and the cause of death, the State has the right to prove each and every element of the crime. *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds, Speck v. Illinois* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279; *People v. Puckett* (1972), 6 Ill. App. 3d 206, 285 N.E.2d 258; see also *People v. Kuntz* (1977), 52 Ill. App. 3d 804, 368 N.E.2d 114.

The judgment of the circuit court of Winnebago County is therefore affirmed.

SEIDENFELD, P. J., and BOYLE, J., concur.